UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-21232-CIV-LENARD/GOODMAN

**ALEXANDER JOHNSON,**

    Plaintiff,

**v.**

**PUBLIX SUPER MARKETS, INC.,**

    Defendant.
_____/

**ORDER GRANTING DEFENDANT PUBLIX SUPER MARKET, INC.'S MOTION TO DISMISS COMPLAINT (D.E. 13)**

**THIS CAUSE** is before the Court on Defendant Publix Super Markets, Inc.'s ("Publix") Motion to Dismiss Complaint, ("Motion," D.E. 13), filed May 23, 2014. Plaintiff, Alexander Johnson, filed a Response on June 16, 2014, ("Response," D.E. 18), to which Defendant filed a Reply on June, 26, 2015, ("Reply," D.E. 21).  Also before the Court is Defendant's Request for Judicial Notice, ("RJN," D.E. 14), filed on May 23, 2014, to which Defendant did not respond.  Upon review of the Motions, Response, Reply, and the record, the Court finds as follows.

**I.**     **Background[1]**

    **A.**     **Facts**

Plaintiff is hearing impaired and suffers from severe bilateral sensorineural hearing loss. (Compl., D.E 1 ¶ 5.)  He requires the use and accompaniment of a service

---

[1] Unless otherwise noted, the following facts are gleaned from Plaintiff's Complaint (Compl., D.E. 1), and are deemed to be true for purposes of Defendant's Motion.

animal—a dog named "Snoopy"—in public environments to alert, assist, and protect him from harm. (Id. ¶¶ 47-48.)

Publix is a grocery retail store chain open to the public. (Id. ¶ 7.) Within its grocery stores, Publix showcases informational product and services through televisions. (Id. ¶ 9.) The videos displayed on the televisions "help the public make better buying decisions before they purchase the products and services by giving additional information not available on the product labels and packaging." (Id.) They "also educate the public in the use and preparation of food products offered within the Defendant's grocery retail stores (such as cooking demonstrations)." (Id.)

"In each instance where the Plaintiff has visited the Defendant's grocery retail stores, none of the audio/video display units provided for close captioning for patrons with hearing disabilities, nor are/were text transcripts made available to the Plaintiff." (Id. ¶ 10.) According to Plaintiff, Publix "has failed to make any of its television/videos showcased in its stores readily accessible to and usable by individuals with hearing disabilities and failed to furnish appropriate auxiliary aids and services to insure effective communication with patrons with hearing disabilities." (Id. ¶ 11.)

On November 6, 2013, Plaintiff, accompanied by Snoopy, visited the Publix grocery store located at 402 East Dania Beach Blvd., in Dania Beach, Florida. (Id. ¶ 51.) A security guard refused to allow him to enter while accompanied by Snoopy unless Plaintiff provided credentials to prove that Snoopy was, in fact, a service animal. (Id. ¶ 52.) Plaintiff informed the security guard that he had a hearing disability and that Snoopy was a service animal, but "the security guard stated that provision of identification for a

2

service animal was state law (which is incorrect), and threatened to *(sic)* 'call the Sheriff' if he (the Plaintiff) didn't leave the public accommodation."  (Id. ¶ 53.)  No reasonable accommodation was provided so Plaintiff could shop that day.  (Id. ¶ 54.)

On April 7, 2014, Plaintiff filed a three-count Complaint against Publix alleging violations of Title III of the ADA, 42 U.S.C. § 12181 et seq., for (1) failing to provide auxiliary aids and services for patrons who are deaf or hard of hearing in all displays (including but not limited to providing close captioning or provide transcripts on all audio video displays), (id. ¶¶ 61-70 (Count I)) and (2) refusing to provide Plaintiff entry accompanied by his service animal on November 6, 2013, (id. ¶¶ 71-79 (Count II)).  Count III alleges a violation of Florida's Civil Rights Act, (id. ¶¶ 80-82), but Plaintiff has since abandoned that claim and has consented to it being stricken.  (See Response at 5 ("Plaintiff acquiesces to the striking of references to supplemental jurisdiction and related Florida state law.").)  Count III is therefore STRICKEN from the Complaint.

**B.    Motion and Response**

On June 16, 2014, Publix filed the instant Motion seeking to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Motion at 1.)  Specifically, it argues that (1) Plaintiff's claims are barred by res judicata, collateral estoppel, and/or are moot pursuant to the Consent Decree entered in a previous ADA class action styled Association for Disabled Americans, Inc. v. Publix Super Markets, Inc., Case No. 98-00917-CIV-HOEVELER, D.E. 230-1 (S.D. Fla. Aug. 1, 2005) ("the Class Action"), and (2) Plaintiff lacks standing to pursue permanent injunctive relief.  (Id. at 2-3.)

3

Plaintiff argues that his claims are not precluded or moot because, although he is a member of the class defined in the Class Action, "he is not operating in the capacity of the parties of the Class Action," and the issues raised in his Complaint "are not within the prevue [sic] of ADA structural barriers as delineated in the Class Action and/or the Consent Decree." (Response at 4.) He further argues that he has standing to seek injunctive relief based on Publix denying him entry with his service animal on one occasion. (Id. at 8-12.)

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint (or a portion thereof) for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. See Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). Furthermore, courts may make reasonable inferences in a plaintiff's favor, but they are not required to draw plaintiff's inference. Sinaltrainal v.

Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

Insofar as Publix challenges Plaintiffs' standing to pursue certain claims, Rule 12(b)(1) applies.  Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).  "'Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Id. (quoting Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).  "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." Id. (citing McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007)).  "'A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" Id. at 1232-33 (citing McElmurray, 501 F.3d at 1251).  "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." Id. at 1233 (citing McElmurray, 501 F.3d at 1251).  "A dismissal for lack of subject matter jurisdiction is

5

not a judgment on the merits and is entered without prejudice." Id. (citing Crotwell v. Hockman-Lewis Ltd., 734 F.2d 767, 769 (11th Cir. 1984).

When deciding a 12(b)(6) motion, courts must examine the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Pursuant to Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The Court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

## III. Discussion

### A. Request for Judicial Notice

Publix seeks judicial notice of the following court filings made in the prior ADA Class Action against Publix:

- The Class Action Complaint, (see Exhibit 1 (D.E. 14-1));

- The Joint Proposed Findings of Fact and Conclusions of Law, (see Exhibit 2, D.E. 14-2);

- Copies of the affidavits from each newspaper attesting to the publication of the Class Notice, copies of the actual notice that ran in each newspaper, and copies of the print-outs from advocacy websites for persons with disabilities in which the Class Notice was posted, (see Exhibit 3 (D.E. 14-3 through 14-5));

6

- The Final Order Certifying the Settlement Class, as Amended, Approving the Consent Decree, and Closing Case, (see Exhibit 4 (D.E. 14-6));

- The Consent Decree, (see Exhibit 5 (D.E. 14-7));

- Joint Status Report dated April 26, 2012, (see Exhibit 6 (D.E. 14-8)); and

- Order Granting Joint Motion to Modify/Extend the Consent Decree, (see Exhibit 7 (D.E. 14-7)).

See Ass'n for Disabled Ams., Inc. v. Publix Super Mkts., Inc., Case No. 98-00917-CIV-HOEVELER (S.D. Fla. filed Apr. 23, 1998).  Defendant has provided the Court with copies of each of these documents.  (See D.E. 14-1 through 14-7.)  Plaintiff did not file a response to the Request for Judicial Notice, and the Court therefore deems it unopposed. See 10th St. Partners, LLC v. Cnty. Comm'n ex rel. Sarasota Cnty., Fla., No. 8:11-cv-2362-T-33TGW, 2012 WL 920201, at *1 (M.D. Fla. Mar. 19, 2012).

As the Eleventh Circuit has explained, "[j]udicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence." Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing Fed. R. Evid. 201(a) & (b)).  "Adjudicative facts are facts that are relevant to a determination of the claims presented in a case." Id. "[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994); see also Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) ("The district court properly took judicial notice of the documents in [the plaintiff's] first case, which were public records

7

that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)).

The Court finds that each of the court filings in the prior class action are public records capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Jones, 29 F.3d at 1553; Horne, 392 F. App'x at 802; Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53-54 (11th Cir. 2006); Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc. __ F.3d __, No. 3:10-cv-423-J-34PDB, 2014 WL 5488791, at *2 (M.D. Fla. Oct. 30, 2014). The Court therefore takes judicial notice of them and will consider them when ruling on the Motion to Dismiss.

### B. Motion to Dismiss

Publix moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). It primarily argues that Plaintiff's claims are barred by res judicata and/or collateral estoppel pursuant to the Consent Decree. (Motion at 7-12.) To put Publix's arguments in their proper context, the Court pauses briefly to recount the relevant facts regarding the prior Class Action against Publix.

On April 23, 1998, the Association for Disabled Americans, Inc., and eight individual plaintiffs, on their own behalf and on behalf of all other individuals similarly situated ("the plaintiffs"), filed suit against Publix under Title III of the ADA, alleging accessibility violations at certain Publix stores in Florida. (See Exhibit 1 (D.E. 14-1), Class Action Complaint, Ass'n for Disabled Ams., Case No. 98-00917-CIV-HOEVELER (S.D. Fla. filed Apr. 23, 1998).) On July 29, 2005, following a fairness hearing where

8

evidence was presented and objections were addressed, the court entered a Final Order adopting the Parties Joint Proposed Findings of Fact and Conclusions of Law ("Joint Findings," Exhibit 2 (D.E. 14-2)), certifying the settlement class, and approving the Consent Decree (Exhibit 5 (D.E. 14-7)).  ("Final Order," Exhibit 4, D.E. 14-6.)

Prior to entering into the Consent Decree, Publix published copies of the Class Notice in the following newspapers: <u>Miami Herald</u>, <u>Fort Lauderdale Sun-Sentinel</u>, <u>Tampa Tribune</u>, <u>Orlando Sentinel</u>, <u>Florida Times-Union</u>, <u>Atlanta Journal Constitution</u>, <u>Birmingham Post-Herald</u>, <u>Charleston Post (Courier)</u>, and the <u>Nashville Tennessean</u>. (Exhibit 3 (D.E. 14-3 through 14-5).)  Additionally, in compliance with Section 22.4c of the Consent Decree, Publix posted the Class Notice on the following advocacy websites for persons with disabilities: www.afb.org/default.asp; www.wapd.org; www.ucp.org/main.cfm.56; www.nemobility.com; and www.abilitymagazine.com.  (<u>See</u> <u>id.</u> (D.E. 14-5).)  Publix also posted complete copies of the Class Notice in each of its stores.  (<u>See</u> <u>id.</u> (D.E. 14-3 at 3).)

The Consent Decree provides a framework for Publix to survey and enhance accessibility at its stores, for Class Counsel and its experts to conduct random inspections, and for Publix to periodically provide store listings to Class Counsel. (Exhibit 5 ¶¶ 10.1-18.4.)  It also provides a Release in which the plaintiffs, on behalf of themselves and all members of the Settlement Class, "fully and finally" release Publix from

> any and all past and/or present claims, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind known or unknown . . . for injunctive relief, declaratory relief,

9

> attorney fees, or damages based upon Title III of the ADA . . . relating to access for persons with disabilities at Publix Super Markets in the Geographic Area.  Release claims also include claims arising under Title III of the [ADA] regarding Accessibility Enhancements . . . .

(Id. ¶¶ 23.1-23.2.)  "'Settlement Class' means all persons with mobility, dexterity, hearing, and/or visual disabilities, as defined by the ADA . . . ."  (Id. ¶ 5.23 (emphasis added).)

The Consent Decree anticipated the 2010 Amendments to the ADA and provided for their incorporation into a modified Consent Decree once they took effect.  (Exhibit 5 ¶ 13.3.)  Thus, on July 25, 2011, Judge Hoeveler granted Class Plaintiff's and Publix's Joint Motion to Modify/Extend the Consent Decree ("Joint Motion," Exhibit 7 (D.E. 9)), which extended the Consent Decree period from March 31, 2012 through March 31, 2018, (see Exhibit 7 ¶ 5).

The Court now turns to whether Count I of the Complaint is barred by res judicata, but does not reach the issue with respect to Count II because, as explained infra, Plaintiff failed to establish the threshold requirement of standing to pursue the injunctive relief requested in Count II.

### 1. Count I: res judicata

First, Publix argues that pursuant to the Consent Decree, Plaintiff's claims are barred by the doctrine of res judicata.  (Motion at 7.)  A complaint may be dismissed under Rule 12(b)(6) where its allegations show that an affirmative defense, such as res judicata, bars recovery on the claim.  Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (citing Larter & Sons v. Dinkier Hotels Co., 199 F.2d 854, 855 (5th Cir.

1952)[2] (holding that affirmative defense of res judicata can be raised properly and decided in 12(b)(6) motion). "Res judicata is a judicially crafted doctrine, created to provide finality and conserve resources." Maldonado v. U.S. Attorney Gen., 664 F.3d 1369, 1375 (11th Cir. 2011) (citing Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.), 456 F.3d 1277, 1284 (11th Cir. 2006) ("'Res judicata . . . is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy . . . .")). "Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." Ragsdale v. Rubbermaid, 193 F.3d 1235, 1238 (11th Cir. 1999).

The doctrine of res judicata will bar a claim if the following four elements are present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Id. However, the Eleventh Circuit has recognized that the application of res judicata "is not strictly mechanical. Rather, . . . courts have some leeway in deciding whether or not res judicata bars a subsequent suit." Maldonado, 664 F.3d at 1375 (citing Moch v. E. Baton Rouge Parish Sch. Bd., 548 F.2d 598 (5th Cir. 1977)).

### a. Final judgment on the merits

Publix argues, and Plaintiff does not appear to dispute, that the Consent Decree constitutes a final judgment on the merits in the Class Action. (Motion at 8.) The Court

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

11

agrees. "A consent decree is a final judgment that may be reopened only to the extent that equity requires." Clark v. Hous. Auth. of City of Alma, 971 F.2d 723, 725 (11th Cir. 1992) (citing Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367 (1992); Sanders v. Monsanto Co., 574 F.2d 198 (5th Cir. 1978) (when accepted by the court, a consent decree operates as a final judgment)). Indeed, the Eleventh Circuit specifically has held that res judicata applies to consent decrees. See Richardson v. Ala. State Bd. of Educ., 935 F.2d 1240, 1244 (11th Cir. 1991); In re Birmingham Reverse Discrimination Emp't Litig., 833 F.2d 1492, 1498 (11th Cir. 1987); United States v. Jefferson Cnty., 720 F.2d 1511, 1517 (11th Cir. 1983); Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 538 (5th Cir. 1978). Thus, the first element of res judicata is satisfied.

### b. Decision rendered by a Court of competent jurisdiction

Next, Publix argues, and Plaintiff does not appear to dispute, that the Consent Decree was rendered by a court of competent jurisdiction, namely, the U.S. District Court for the Southern District of Florida, which retained jurisdiction over its enforcement. (Motion at 8 (citing Consent Decree § 28).) The Court agrees that the Consent Decree was rendered by a court of competent jurisdiction. Counts I and II are brought under the ADA, a federal statute. "When a party claims a right that arises under the laws of the United States, a federal court has jurisdiction over the controversy." M.H.D. v. Westminster Sch., 172 F.3d 797, 802 n.12 (11th Cir. 1999). Thus, the second element of res judicata is satisfied.

### c.     The parties, or those in privity, are identical in both suits

Next, Publix argues that the Parties are identical in both cases. (Motion at 8-9 and n.6-7.)  Specifically, Publix was the defendant in the Class Action, and Plaintiff was a member of the Settlement Class. (Id. n.7; Reply at 3.)  Plaintiff concedes that he is a member of the Settlement Class. (Response at 4.)  He argues instead—without any elaboration or citation to authority—that "he is not operating in the capacity of the parties of the Class Action." (Id.)  The Court fails to perceive, and Plaintiff does not explain, how this distinction is relevant to a determination of whether, for res judicata purposes, the parties to this Action are identical to the parties in the Class Action.  The Court finds that the Parties are identical, and that the third element of res judicata is satisfied.

### d.     Same cause of action involved in both cases

Finally, Publix argues that the same causes of action are involved in both cases. (Motion at 9.)  Plaintiff argues that the issues he raises "are not within the prevue [sic] of ADA structural barriers as delineated in the Class Action and/or the Consent Decree." (Response at 4.)  In its Reply, Publix argues that both the instant Action and the Class Action involve "indivisible alleged violations of accessibility standards in Publix's Florida grocery stores." (Reply at 3 n.1.)

"The determination of whether a litigant has asserted the same cause of action in two proceedings depends upon whether the primary right and duty are the same in both cases." Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998) (citation omitted).  "Res judicata acts as a bar 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the

same operative nucleus of fact.'" Id. (quoting Manning v. City of Auburn, 953 F.2d 1355, 1358-59 (11th Cir. 1992)). "A court, therefore, must examine the factual issues that must be resolved in the second suit and compare them with the issues explored in the first case." Id.

As previously mentioned, Count I of Plaintiff's Complaint alleges that Publix violated Title III of the ADA by failing to provide closed captioning or auxiliary aids to individuals with hearing impairments so that those individuals could share in the equal enjoyment of Publix's video displays. (See Compl. ¶¶ 61-70.)

The Class Action Complaint specifically states that the individually-named plaintiffs, as well as members of the corporate plaintiff, include "individuals with . . . hearing impairments . . . ." (Exhibit 1 (D.E. 14-1 ¶ 10.)) It alleges that Publix discriminated against these plaintiffs, in violation of the ADA, "by denying them access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, . . . and by failing to remove architectural barriers[.]" (Id. ¶ 17.) Thus, Plaintiff's argument that the Class Action addressed only structural (i.e., architectural) barriers is refuted by the plain language of the Class Action Complaint which made it a point to give Publix's failure to remove architectural barriers a separate clause. (See id.)

This conclusion becomes even clearer in the Class Action Complaint's specific allegations of discrimination and ADA non-compliance. (See id. ¶¶ 19-20.) In fact, the Class Action Complaint contemplates the violation of which Plaintiff complains in Count I: discrimination against individuals with hearing impairments due to ADA non-

complaint telecommunication devices. (See id. ¶ 19.) Specifically, it alleges that Publix "is in violation of 42 U.S.C. 12181 et seq., and 28 CFR 36.302 et seq., and is discriminating against the plaintiffs and their members by failing to, inter alia, . . .

> (ii)   install the proper number or appropriate telecommunication devices for individuals with hearing impairments, reposition telephones to appropriate levels, and/or provide requisite signage, electrical and acoustical outlets and shelf spaces; . . .

(Id. ¶ 19 (emphasis added); see also id. ¶ 20(ix) (alleging Publix violated the ADA by failing "to provide public telephones with the requisite hearing aid and TDD capability and volume controls"). Furthermore, the Consent Decree broadly releases Publix from "any and all past and/or present claims, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind known or unknown . . . for injunctive relief, declaratory relief, attorney fees, or damages based upon Title III of the ADA . . . relating to access for persons with disabilities at Publix Super Markets in the Geographic Area.  Release claims also include claims arising under Title III of the [ADA] regarding Accessibility Enhancements . . . ." (Id. ¶¶ 23.1-23.2.) Unquestionably, neither the Class Action Complaint nor the Consent Decree was limited, as Plaintiff argues, to architectural or structural barriers. (See id.)

The fact that the Class Action involved individuals with hearing impairments suing Publix for discrimination under Title III of the ADA due to ADA non-compliant telecommunication devices leads the Court to the inescapable conclusion that "the same cause of action is involved in both cases." Ragsdale, 193 F.3d at 1238.  Therefore, the Court finds that Count I of the instant Complaint is barred by res judicata, and is

dismissed with prejudice.  See Hilson v. Publix Super Markets, Inc., 14-60552-CIV-HOEVELER, Order Granting Motion to Dismiss, D.E. 15 at 2 (S.D. Fla. May 16, 2014) (dismissing complaint with prejudice where the plaintiff's claims were barred by res judicata pursuant to the consent decree at issue in this case).

The Court does not reach the question of whether res judicata bars Count II of the Complaint because, as discussed below, the Court finds that Plaintiff failed to plead the threshold requirement of standing to pursue Count II.  See CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) ("Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'") (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)); see also Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 490 (1982) (Brennan, J., dissenting) ("A plaintiff's standing is a jurisdictional matter for Art. III courts, and thus a 'threshold question' to be resolved before turning attention to more 'substantive' issues.").

### 2.     Count II: injunctive relief

Count II alleges that Publix violated the ADA by denying Plaintiff entry to its store while accompanied by his service animal.  (Compl. ¶ 74.)  It seeks a permanent injunction ordering Publix to "cease discrimination against the Plaintiff and other disabled persons who use service animals[.]"  (Id. at 19-20.)  Publix argues that Plaintiff lacks standing to seek injunctive relief.  (Motion at 14-16.)

"To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate

remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." Thomas v. Bryant, 614 F.3d 1288, 1317 (11th Cir. 2010). "In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (citations omitted); see also Stevens v. Premier Cruises, Inc., 215 F.3d 1237, 1239 (11th Cir. 2000) (holding, in ADA case, that to pursue injunctive relief, the plaintiff was required to "plead a genuine threat of imminent injury[.]") Plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001). That requires "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Shotz, 256 F.3d at 1082.

Count II is not the typical ADA claim where a plaintiff seeks an injunction based on obstructive architectural barriers. See Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335-37 (11th Cir. 2013); Shotz, 256 F.3d at 1079;[3] Stevens, 215 F.3d at 1238-39. Rather, Plaintiff claims that, on one occasion, a misinformed (and perhaps overzealous) security guard denied Plaintiff and his service dog entry into the store. (Compl. ¶¶ 50-54.) In his Response, Plaintiff concedes that he was only denied entry on one occasion,

---

[3] Coincidentally, one of the plaintiffs in Shotz, who was confined to a wheelchair and encountered architectural barriers at the county courthouse, also used a service dog. 256 F.3d at 1078. Although sheriff's deputies told the plaintiff that dogs were not allowed in the courtroom, the judge ultimately permitted it. Id. at 1078-79.

and that he had visited the same Publix location on many previous occasions without incident. (Response at 9.)

Plaintiff has not sustained his burden of pleading a real and immediate threat of future injury. See Houston, 733 F.3d at 1337. In Houston, the Eleventh Circuit noted that an ADA plaintiff does not have standing to pursue injunctive relief if the likelihood of suffering future injury is "contingent upon events that are speculative or beyond his control." Id. (citing City of Los Angeles v. Lyons, 461 U.S. 95, 107-09 (1983) (holding that the plaintiff lacked standing for injunctive relief because it was speculative that police officers would arrest him again and that those police officers would then apply an allegedly unconstitutional chokehold again)). Here, the Complaint alleges that "Plaintiff continues to desire to return to Publix grocery store . . . to shop, but Plaintiff continues to be injured in that he is concerned that he will again be humiliated and discriminated against due to the fact he is accompanied by his service animal, all in violation of the ADA and State statutes." (Compl. ¶ 60.) This allegation is categorically and emphatically "contingent upon events that are speculative or beyond his control." Houston, 733 F.3d at 1337. Stated differently, the threat of future injury is not "real and immediate" but rather "merely conjectural or hypothetical[.]" Shotz, 256 F.3d at 1082. Plaintiff therefore has failed to "show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." Wooden, 247 F.3d at 1284. Consequently, he lacks standing to pursue injunctive relief and Count II is dismissed for lack of subject matter jurisdiction. See Stalley, 524 F.3d at 1232.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

**(1)** Publix's Request for Judicial Notice (D.E. 14), filed May 23, 2014, is **GRANTED**;

**(2)** Publix's Motion to Dismiss the Complaint (D.E. 13), filed May 23, 2014, is **GRANTED**;

**(3)** Count I of the Complaint is **DISMISSED with prejudice** for failure to state a claim;

**(4)** Count II of the Complaint is **STRICKEN**;

**(5)** Count III of the Complaint is **DISMISSED without prejudice** for lack of subject matter jurisdiction;

**(6)** All pending motions are **DENIED AS MOOT**; and

**(7)** This case is now **CLOSED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of March, 2015.

*[signature: Joan A. Lenard]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**